FILED
2026 Aug-27 AM 08:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| JONATHAN PUTNAM,<br>on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HIBBETT, INC. and HIBBETT RETAIL, INC.<br><br>Defendant. | Case No.:<br><br>CLASS ACTION<br><br>**DEMAND FOR JURY TRIAL** |

**<u>COMPLAINT</u>**

Plaintiff Jonathan Putnam ("Plaintiff" or "Mr. Putnam") brings this Class Action Complaint against Hibbett, Inc. and Hibbett Retail, Inc. (collectively "Defendants" or "Hibbett"), individually and on behalf of all others similarly situated ("Class Members"), and alleges, upon personal knowledge as to his own actions and his counsel's investigation, and upon information and belief as to all other matters, as follows:

## I. INTRODUCTION

1. This action arises from Hibbett's alleged failure to employ reasonable safeguards for personally identifiable information ("PII") entrusted to it by thousands of individuals. The affected data included names paired with Social Security numbers or Individual Taxpayer Identification Numbers.

2. Hibbett retained that PII without encryption on systems accessible through the Internet or other telecommunication before and continuing through August 2026.

3. During the approximately six months preceding this filing, Hibbett discovered that its network had been breached during that same general period (the "Data Breach").

4. By accepting and retaining Plaintiff's sensitive PII, Hibbett assumed a duty to use safeguards reasonable under the circumstances to prevent unauthorized disclosure.

5. On or about August 26, 2026, Hibbett announced that personally identifiable information and other data had been taken from its systems. The stolen material included Plaintiff's and Class Members' PII.

6. The specific mechanism of intrusion, the vulnerabilities exploited, and the remedial measures adopted afterward have not, according to Plaintiff, been adequately disclosed to him or the proposed Class.

7. Plaintiff alleges that the absence of encryption increases the potential for the stolen information to be used or transferred without authorization, including for targeted marketing or other improper purposes.

8. Plaintiff alleges that Hibbett's security procedures were not reasonable in light of the sensitivity of the information it maintained and that this deficiency

contributed to the exposure of Plaintiff's and Class members' PII.

9. Plaintiff further contends that reasonable data-security practices required Hibbett to remain informed about publicly known threats involving the exfiltration and misuse of sensitive PII.

10. The incident has caused concrete harm to Plaintiff and the proposed Class, including diminished value of their PII; mitigation, detection, and recovery expenses; time and opportunity costs associated with responding to identity theft, tax fraud, or other misuse; loss of privacy through disclosure; and an increased, continuing risk of additional misuse. That danger remains because copies of the unencrypted data may still be available to unauthorized persons or retained in Hibbett's systems without adequate protection.

11. Cyberattacks against retailers were widely publicized before the Security Incident. Plaintiff alleges that Hibbett knew or should have understood the nature and seriousness of that threat.

12. Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that the PII of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal

use. As a result, the PII of Plaintiff and Class Members was compromised through disclosure to an unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

13. Plaintiff relies on these public warnings to allege that Hibbett had advance notice of several relevant risks: companies were being actively targeted; stolen corporate data could be posted or traded through dark-web channels; and attackers were increasingly using disclosure of stolen data as leverage.

14. Against that backdrop, Plaintiff alleges that maintaining unencrypted PII on Internet or telecommunication accessible systems created a foreseeable risk of exfiltration, particularly for a retailer holding large volumes of sensitive information.

15. Plaintiff therefore alleges that Hibbett should have anticipated unauthorized access and publication of the PII and should have used measures such as encryption of Social Security numbers and limiting Internet or telecommunication exposure of sensitive data.

16. Hibbett acquired, collected, and retained PII belonging to Mr. Putnam and proposed Class members. Plaintiff alleges that possession of that information placed responsibility on Hibbett to take reasonable steps to keep it confidential and prevent unauthorized disclosure. Mr. Putnam and proposed Class members allegedly

took reasonable measures to preserve the confidentiality of their own PII and relied on Hibbett to use the information only for legitimate business purposes and to disclose it only as authorized.

## II. PARTIES

17. Plaintiff is a resident citizen of Dekalb County, Alabama.

18. Defendant Hibbett, Inc. is a Delaware corporation with its principal place of business in Jefferson County, Alabama.

19. Defendant Hibbett Retail, Inc. is a Delaware corporation with its principal place of business in Jefferson County, Alabama

20. The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

21. All of Plaintiff's claims stated herein are asserted against Defendants and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## III. JURISDICTION AND VENUE

22. Subject-matter jurisdiction exists under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Plaintiff alleges that the proposed class exceeds 100 members,

the amount in controversy exceeds $5 million, exclusive of interest and costs, and minimal diversity exists between at least one Class member and a Defendant.

23. For diversity purposes, each Defendant is a corporation formed under Delaware law with its principal place of business in Jefferson County, Alabama.

24. Personal jurisdiction is proper because Defendants conduct substantial business in Alabama and within this District and allegedly collected or stored the PII at issue here in this District.

25. Venue is proper in this District under 28 U.S.C. §1391(b) because Defendants operate within this District and a substantial portion of the acts or omissions alleged in the Complaint, including the collection or storage of PII, occurred here.

## IV. FACTUAL ALLEGATIONS

26. Hibbett was obligated to adopt measures reasonable under the circumstances to protect Plaintiff's PII and the PII belonging to proposed Class members from involuntary disclosure to third parties.

27. Within approximately the past six months, Hibbett experienced a network disruption that affected its ability to maintain the security of certain PII. Intruders gained access to Hibbett's systems and wrongfully obtained the PII, including name and Social Security Number or ITIN of Plaintiff and the proposed Class members.

28. The details of the root cause of the Security Incident, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur again have not been shared with Plaintiff and the proposed Class members, who retain a vested interest in ensuring that their information remains protected.

29. As alleged, the unencrypted PII of Plaintiff and the PII belonging to proposed Class members may fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff and the proposed Class members. Unauthorized individuals can easily access Plaintiff's PII and the PII belonging to proposed Class members.

30. Plaintiff alleges that Hibbett did not use security safeguards reasonable for the circumstances appropriate to the nature of the sensitive, unencrypted information they were maintaining for Plaintiff and the proposed Class members, causing the exposure of PII for Plaintiff and the proposed Class members.

31. Hibbett's obligation to protect Plaintiff's and proposed Class members' PII required it to access publicly and readily available information about potential threats for the unauthorized exfiltration and misuse of such information.

32. Recent cyberattacks on the retail industry are well known and Defendants were, or should have been, well-aware of the threat they faced.

33. CISA addressed this known threat in its September 2020 online Ransomware Guide, which warned that "[m]alicious actors have adjusted their

ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."

34. An April 2020 ZDNet report—"Ransomware mentioned in 1,000+ SEC filings over the past year"—similarly explained that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."

35. The FBI had already issued a comparable warning in its October 2019 online article, "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations," stating that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."

36. The FBI also published multiple public service announcements warning employers of email phishing schemes targeting online employee payroll accounts and sensitive data associated therewith.

37. Plaintiff alleges that this multitude of publicly and readily available information, warnings, and public service announcements confirms that, prior to the

Security Incident, Hibbett knew, or in the exercise of reasonable care should have known that (i) cybercriminals were targeting, and ferociously aggressive in their pursuit of companies such as Hibbett, (ii) cybercriminals were leaking corporate information on dark web portals, and (iii) cybercriminals' tactics included threatening to release stolen data.

38. Given the information publicly and readily available on the internet and elsewhere before the Security Incident, Hibbett, having elected to store the unencrypted PII of Plaintiff and the PII belonging to proposed Class members in a system reachable through the Internet or telecommunication, had reason to be on guard for the exfiltration of the PII and Hibbett's type of business had cause to be particularly on guard against such an attack.

39. Accordingly, prior to the Security Incident, Defendants knew, or in the exercise of reasonable care should have known that there was a foreseeable risk that Plaintiff's and proposed Class members' PII could be accessed, exfiltrated, and published as the result of a cyberattack, and that they should have encrypted the Social Security numbers and other sensitive data elements within the PII to protect against their publication and misuse if there is a cyberattack and/or stored that PII in a non-Internet or telecommunication accessible environment.

40. Plaintiff alleges that Hibbett acquired, collected, and stored Plaintiff's PII and the PII belonging to proposed Class members.

41. When Hibbett acquired and retained Plaintiff's PII and the PII belonging to proposed Class members, Hibbett assumed legal and equitable duties and knew, or reasonably should have understood that they were responsible for protecting the PII from disclosure.

42. Plaintiff and the proposed Class members have taken reasonable steps to maintain the confidentiality of their PII and relied on Hibbett to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

43. The FBI has emphasized prevention, explaining that "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."

44. To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Security Incident, Hibbett could and should have implemented, as recommended by the United States Government, the following measures:

a. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered. Implement an awareness and training program.

b. Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

c. Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

d. Configure firewalls to block access to known malicious IP addresses.

e. Consider using a centralized patch management system. Patch operating systems, software, and firmware on devices.

f. Set anti-virus and anti-malware programs to conduct regular scans automatically.

g. Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

h. Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

i. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications. Disable macro scripts from office files transmitted via email.

j. Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

k. Consider disabling Remote Desktop protocol (RDP) if it is not being used.

l. Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

m. Execute operating system environments or specific programs in a virtualized environment.

n. Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

45. Because Hibbett allegedly maintained PII for thousands of individuals, Plaintiff contends that a reasonable security program should have incorporated appropriate measures of the type identified in the foregoing government and industry guidance.

46. Despite industry warnings and the prevalence of publicly reported security incidents, Plaintiff alleges that Hibbett did not take measures sufficient to prevent the compromise alleged here.

47. Plaintiff alleges that disclosure of PII containing Social Security numbers creates especially durable consequences because the information is difficult to replace and can support fraudulent activity long after the initial theft.

48. Plaintiff alleges that stolen identity data has recognized value in criminal markets. Sources report prices ranging from $40 to $200 for personal information, $50 to $200 for bank details, $5 to $110 for card information, and $900 to $4,500 for access to datasets from entire company breaches.

49. The Complaint identifies several potential uses of stolen identity information, including attempts to obtain identification documents, government benefits, medical services, housing, or other benefits or services in the victim's name.

50. One method of monetizing stolen PII described herein is the creation of so-called "Fullz" identity packages. Such packages can be assembled by combining

stolen information with other available data to create a more complete identity profile concerning a particular person.

51. Based on the alleged post-breach misuse and the nature of the information taken, Plaintiff contends that a factfinder may reasonably infer that the compromised PII is being used in a manner traceable to the Security Incident.

52. As a result, Plaintiff and the proposed Class allege that they are now required to devote ongoing attention to financial and personal records and may continue to incur losses even apart from any completed fraudulent transaction.

53. Plaintiff further alleges that the volume and sensitivity of information maintained by Hibbett made the foreseeable consequences of a security failure potentially significant for a large number of individuals.

54. The Complaint attributes the alleged injuries to Hibbett's failure to implement and maintain reasonable controls protecting the PII entrusted to it.

55. Mr. Putnam expected Hibbett to use reasonable security measures to protect information it collected from him. Plaintiff alleges that Hibbett continues to possess his information and therefore continues to bear obligations concerning its security.

56. Mr. Putnam alleges that he exercises care in handling his own sensitive information: he keeps documents containing it in a secure location and does not knowingly transmit unencrypted sensitive information through unsecured channels.

57. When he provided information to Hibbett, Mr. Putnam understood that Hibbett would devote appropriate resources to the security of information entrusted to it.

58. In approximately the last ten to fifteen years, Mr. Putnam does not recall receiving notice that his information had been compromised in any other data-breach event.

59. Based on the information currently available to him, Mr. Putnam alleges that his compromised information was published on the dark web. Since learning of the incident, Mr. Putnam has spent time monitoring his accounts and expects that monitoring and other protective efforts will continue.

60. Mr. Putnam alleges that, after the Security Incident, he experienced increased spam calls and emails as well as several phishing attempts directed to his email and text messages.

61. Plaintiff further alleges that the breach has caused anxiety, sleep disruption, stress, fear, and frustration and that these effects are ongoing rather than limited to temporary inconvenience.

62. According to Plaintiff, the unauthorized exposure and taking of his confidential information itself caused a loss of privacy.

63. Plaintiff also alleges a materially increased and impending risk that criminals will use the exposed information for fraud or other identity-related misuse.

64. Mr. Putnam anticipates spending additional time and money attempting to reduce and address those risks.

65. Because Hibbett continues to possess his information, Mr. Putnam seeks prospective protection against additional unauthorized access or disclosure.

66. As alleged, the development of “Fullz” packages means that stolen PII from the Security Incident can easily be used to link and identify it to Plaintiff’s and the Class’s phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Security Incident, criminals can easily create a “Fullz” package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

67. That is exactly what is happening to Plaintiff and Class members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Mr. Putnam’s and the Class’s stolen PII is being misused, and that such misuse is fairly traceable to the Security Incident.

68. Plaintiff alleges that the Security Incident has injured both Mr. Putnam and the proposed Class through misuse or exposure of PII that is traceable to Hibbett.

69. Plaintiff alleges that the exposure made affected individuals potential targets for account intrusion, unauthorized financial activity, fraudulent new accounts, phishing, and related schemes using the compromised information.

70. Given the sensitivity and volume of information held in Hibbett's systems, Plaintiff alleges that Hibbett should have anticipated that inadequate safeguards could injure a substantial number of people.

71. Plaintiff further alleges that Hibbett knew or should have known that disclosure of Social Security-number information could impose significant mitigation costs and other losses on affected individuals.

72. Plaintiff and the proposed Class allege both present and continuing harm, including monetary loss, time spent responding to the incident, anxiety, emotional distress, and increased exposure to injury.

73. At present, Hibbett has not offered Mr. Putnam and the proposed Class members an adequate amount of credit monitoring services. Further, any service offered will likely be inadequate to protect Plaintiff and the proposed Class members from the threats they face for years to come, particularly in light of the PII at issue here.

74. The information accessed and disseminated in the Security Incident is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, where victims can easily cancel or close credit and debit card

accounts. The information disclosed in this Data Breach is impossible to "close" and difficult, if not impossible, to change (such as Social Security numbers).

75. For that reason, Plaintiff and the proposed Class members are at a present and continuing risk of fraud and identity-related fraud for many years into the future, if not forever.

76. The retail cost of credit monitoring and identity-related fraud monitoring can cost $200 or more a year per Class Member. This is a reasonable and necessary cost to protect proposed Class members from the danger of identity-related fraud that arose from Hibbett's Data Breach. This is a future cost for a minimum of five years that Plaintiff and the proposed Class members would not need to bear but for Hibbett's failure to safeguard their Confidential Information.

## V. CLASS ACTION ALLEGATIONS

77. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this class action as a nationwide class action on behalf of himself and the following class of similarly situated individuals:

> All resident citizens of the United States whose personal identifying information (PII) was exposed to third parties without authorization because of the Security Incident experienced by Hibbett.

78. Excluded from the Class are the following individuals and/or entities: Hibbett Retail, Inc. and Hibbett, Inc. including their parents, subsidiaries, affiliates, officers and directors, and any entity in which either Hibbett entity has a controlling

interest. In addition, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including without limitation their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

79. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

80. Based on information presently available to Plaintiff, the putative Class is comprised of more than 500 persons, making joinder impracticable. Disposition of this matter as a class action will provide substantial benefits and efficiencies to the Parties and the Court.

81. The rights of each Class Member were violated in a virtually identical manner because of Hibbett's willful, reckless, wanton and/or negligent actions and/or inaction.

82. Questions of fact and law shared across the proposed Class exists and predominate over any questions affecting only individual proposed Class members. These include:

a. Whether Hibbett had a duty to protect Mr. Putnam's PII and the PII belonging to proposed Class members;

b. Whether Hibbett owed a duty not to disclose Mr. Putnam's PII and the PII belonging to proposed Class members to third parties without authorization;

c. Whether Hibbett failed to reasonably safeguard Mr. Putnam's PII and the PII belonging to proposed Class members;

d. What measures Hibbett took and how Hibbett responded to the Security Incident;

e. Whether Hibbett adequately, promptly, and accurately informed Mr. Putnam and the proposed Class members that their PII had been compromised;

f. Whether Hibbett violated the law by failing to promptly notify Mr. Putnam and the proposed Class members that their PII had been compromised;

g. Whether Hibbett failed to implement and maintain security safeguards reasonable for the circumstances appropriate to the character and extent of the information compromised in the Security Incident;

h. Whether Hibbett adequately addressed and corrected the vulnerabilities which permitted the Security Incident to occur;

i. Whether Mr. Putnam and the proposed Class members may recover nominal, actual, and/or consequential damages from Hibbett;

j. Whether Mr. Putnam and the proposed Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced because of the Security Incident.

83. Mr. Putnam's claims are typical of those of other proposed Class members because all had their PII compromised because of the Security Incident, due to Hibbett's misfeasance.

84. This class action is also appropriate for certification because Hibbett has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward proposed Class members and making final injunctive relief appropriate concerning the Class as a whole. Hibbett's policies challenged herein apply to and affect proposed Class members uniformly and Mr. Putnam's challenge of these policies hinges on Hibbett's acts and omissions concerning the Class as a whole, not on facts or law applicable only to Plaintiff.

85. Plaintiff will adequately and fairly represent and protect the interests of proposed Class members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have sustained are typical of other proposed Class members. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

86. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein. In addition, it will permit a large number of proposed Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions

would require. Class action treatment will permit the adjudication of relatively modest claims by certain proposed Class members, who could not individually afford to litigate a complex claim against large corporations, like Hibbett. Further, even for those proposed Class members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts. The class litigation is an appropriate method for fair and efficient adjudication of the claims involved.

87. Plaintiff alleges that the nature of this action and the nature of laws available to Plaintiff and the proposed Class members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Mr. Putnam and the proposed Class members for the wrongs alleged because Hibbett would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

88. The litigation of the claims brought herein is manageable. Hibbett's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of proposed Class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

89. Adequate notice can be given to proposed Class members directly using information maintained in Hibbett's records.

90. Unless a Class-wide injunction is issued, Hibbett may continue in its failure to properly secure the PII belonging to proposed Class members, Hibbett may continue to refuse to provide proper notification to proposed Class members regarding the Security Incident, and Hibbett may continue to act unlawfully as set forth in this Complaint.

91. Further, Hibbett has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief concerning proposed Class members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

92. Similarly, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

- Whether Hibbett owed a legal duty to Mr. Putnam and the proposed Class members to exercise due care in collecting, storing, using, and safeguarding their PII;

- Whether Hibbett breached that legal duty;

- Whether Hibbett failed to comply with its own policies and governing law, regulations, and standards prevailing in the industry relating to data security;

- Whether Hibbett adequately and accurately informed Mr. Putnam and the proposed Class members that their PII had been compromised;

- Whether Hibbett failed to maintain reasonable security safeguards for the information compromised in the Security Incident;

- Whether Plaintiff and the Class members are entitled to recover nominal, actual, and/or consequential damages, and/or injunctive relief arising from Hibbett's misconduct.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class)**

93. Plaintiff and the proposed Class re-allege and incorporate by reference herein, all of the allegations contained in paragraphs 1-92.

94. Hibbett has actual knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the proposed Class could and would suffer if the PII were wrongfully disclosed.

95. The Complaint alleges that Hibbett knew or reasonably should have known that the failure to exercise due care in the acquiring, retaining, and using of Mr. Putnam's PII and the proposed Class involved an unreasonable danger of injury to Plaintiff and the proposed Class, even if the harm occurred through the criminal

acts of a third party, which criminal acts Hibbett had good reason to anticipate in light of the recent cyberattacks affecting the retail industry of which Hibbett is part, as well as the internet-accessible information, including public service announcements, regarding the same and discussed, supra.

96. Indeed, Hibbett had a duty under principles of traditional tort law principles, especially given the special relationship alleged herein, to anticipate and protect Plaintiff's and Class Member's PII from foreseeable dangers, including dangers relating to the compromise and misuse of their Confidential Information, by, among other matters, exercising reasonable care in safeguarding, securing, and protecting their Confidential Information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other matters, designing, maintaining, and testing Hibbett's security protocols to ensure that Plaintiff's PII and the proposed Class in Hibbett's possession was adequately secured and protected.

97. Plaintiff alleges that Hibbett was further obligated to exercise appropriate clearinghouse practices to remove from a system reachable through the Internet or telecommunication the PII it was no longer required to retain pursuant to regulations and had no reasonable need to maintain in an system reachable through the Internet or telecommunication.

98. Hibbett was further obligated to have procedures in place to detect and prevent the improper access and misuse of Mr. Putnam's PII and the proposed Class.

99. Hibbett's duty to use reasonable security controls arose because of the special relationship that existed between Hibbett and Plaintiff and the proposed Class. That special relationship arose because Hibbett acquired Plaintiff's and the Class's confidential PII in the course of its business practices.

100. The Complaint alleges that Hibbett was subject to an "independent duty," untethered to any contract between Hibbett and Mr. Putnam or the Class.

101. A breach of security, access by persons lacking authorization, and resulting injury to Plaintiff and the proposed Class was foreseeable, particularly in light of Hibbett's deficient security practices.

102. Plaintiff and the proposed Class were the foreseeable and probable victims of any deficient security practices and procedures. Given the recent cyberattacks impacting Hibbett's industry, as well as the multitude of publicly and readily available information, warnings, and public service announcements extended by the FBI and other organizations as discussed, supra, Hibbett knew, or in the exercise of reasonable care should have known of the inherent risks in acquiring and retaining Plaintiff's PII and the proposed Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Hibbett's systems.

103. In addition, given Hibbett's size and sophistication as a large company, it should have foreseen the possibility of a cyberattack and prevented such a possibility to protect Plaintiff's and proposed Class members' Confidential Information.

104. Hibbett's own careless actions and/or omissions created a foreseeable danger of injury to Plaintiff and the proposed Class. This misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Security Incident as set forth herein. Hibbett's misconduct also included its decisions not to comply with standards prevailing in the industry for the safekeeping of Mr. Putnam's PII and the proposed Class, including basic encryption techniques freely available to Hibbett.

105. Plaintiff and the proposed Class had no practical means to safeguard their PII that was in, and possibly remains in, Hibbett's possession.

106. Hibbett was uniquely situated to guard against the harm suffered by Plaintiff and the proposed Class because of the Security Incident, especially given their size and sophistication, and the foreseeability of a cyberattack on its network and systems.

107. Plaintiff alleges that Hibbett had and continue to have a duty to adequately disclose that Plaintiff's PII and the proposed Class within Hibbett's possession might have been compromised, how it was compromised, and precisely

the types of data that were compromised and when. Such notice was necessary to allow Mr. Putnam and the proposed Class to (i) take steps to prevent, mitigate, and repair any identity-related fraud and the fraudulent use of their PII by third parties and (ii) prepare for the sharing and detrimental use of their confidential information.

108. Hibbett was obligated to employ proper procedures to prevent the unauthorized dissemination of Plaintiff's PII and the proposed Class.

109. Hibbett has admitted that Plaintiff's PII and the proposed Class was wrongfully lost and disclosed to unauthorized third persons because of the Security Incident.

110. Through its acts and omissions, Hibbett unlawfully breached their duties to Plaintiff and the proposed Class by failing to implement industry protocols and exercise reasonable care in securing Mr. Putnam's PII and the proposed Class during the time the PII was within Hibbett's possession or control.

111. Hibbett unreasonably safeguarded Mr. Putnam's PII and the proposed Class in deviation of standard industry rules, regulations, and practices at the time of the Security Incident.

112. Plaintiff alleges that Defendants failed to heed industry warnings and alerts to provide adequate safeguards to protect Mr. Putnam's PII and the proposed Class in the face of increased risk of theft.

113. Through its acts and omissions, Defendants unlawfully breached their duties to Mr. Putnam and the proposed Class by failing to have appropriate procedures in place to detect and prevent dissemination of the PII.

114. Hibbett breached its duty to exercise appropriate clearinghouse practices by failing to remove from the system reachable through the Internet or telecommunication any PII it was no longer required to retain pursuant to regulations and which Hibbett had no reasonable need to maintain in an system reachable through the Internet or telecommunication.

115. Through its acts and omissions, Hibbett unlawfully breached its duty to adequately and timely disclose to Mr. Putnam and the proposed Class the occurrence and extent of the Security Incident.

116. Absent Hibbett's wrongful and negligent breach of duties owed to Plaintiff and the proposed Class, Mr. Putnam's PII and the proposed Class would not have been compromised.

117. Plaintiff alleges that a direct causal relationship connects Hibbett's failure to implement security controls to protect Mr. Putnam's PII and the proposed Class and the harm, or risk of imminent harm, suffered by Mr. Putnam and the proposed Class. Plaintiff's PII and the proposed Class was lost and accessed as the proximate result of Hibbett's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security controls.

118. Directly and foreseeably because of Hibbett's negligence, Plaintiff and the proposed Class have sustained and are likely to sustain injury, including without limitation: (i) actual identity-related fraud; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) expenses paid from their own funds associated with the prevention, detection, and recovery from identity-related fraud, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Security Incident, including without limitation efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity-related fraud; (vi) becoming targets for phishing and ransomware attacks; (vii) costs associated with placing freezes on credit reports; (viii) the continuing risk to their PII, which remain in Hibbett's possession and is subject to further disclosure to persons lacking authorization so long as Hibbett fail to undertake appropriate and adequate measures to protect Mr. Putnam's PII and the proposed Class; and (ix) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised because of the Security Incident for the remainder of the lives of Plaintiff and the proposed Class.

119. Directly and foreseeably because of Hibbett's negligence, Plaintiff and the proposed Class have sustained and are likely to continue sustaining other forms

of injury and/or harm, including without limitation, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

120. Further, as a foreseeable consequence of Hibbett's negligence, Plaintiff and the proposed Class have sustained and are likely to sustain the continuing risks of exposure of their PII, which remain in Hibbett's possession and is subject to further disclosure to persons lacking authorization so long as Hibbett fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

121. Directly and foreseeably because of Hibbett's negligence, Plaintiff and the proposed Class may recover nominal, actual, and consequential damages.

## COUNT II
## NEGLIGENCE PER SE
## (On Behalf of Plaintiff and the Class)

122. Plaintiff and the proposed Class re-allege and incorporate by reference herein, all of the allegations contained in preceding paragraphs 1-92.

123. Federal and state statutory law and applicable regulations, including Section 5 of the Federal Trade Commission Act (15 U.S.C. §45), and the Alabama Data Breach Notification Act of 2018, set forth and otherwise establish duties in the industry that were applicable to Hibbett and with which Hibbett was obligated to comply at all relevant times hereto.

124. As alleged, the duties and requirements imposed by the FTCA apply to businesses, like Hibbett, who collect, store and maintain sensitive PII about their employees or customers in their systems or network, as Hibbett did with Mr. Putnam's and proposed Class members' PII.

125. The Complaint alleges that Hibbett breached its duties to Plaintiff and the proposed Class members under the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security and consumer privacy requirements and practices to safeguard Mr. Putnam's and proposed Class members' PII.

126. Hibbett's failure to comply with FTCA and governing law and regulations constitutes negligence per se.

127. Plaintiff and the proposed Class members are within the class of persons the FTCA and governing law and regulations were intended to protect and the harm to Mr. Putnam and the proposed Class members resulting from the Security Incident was the type of harm against which the FTCA and governing law and regulations were intended to prevent.

128. Subsection 8-38-3(a) of the Alabama Data Breach Notification Act of 2018 imposes a clear duty on businesses like Hibbett to protect PII/PHI: "Each covered entity and third-party agent shall implement and maintain reasonable security controls to protect sensitive personally identifying information against a breach of security."

129. Hibbett breached this duty owed to Plaintiff and the proposed Class members under Subsection 8-38-3(a) of the Alabama Data Breach Notification Act of 2018 by failing to implement and maintain reasonable security controls to protect their sensitive PII/PHI against a breach of security.

130. Absent Hibbett's wrongful and negligent breach of its duties owed to Plaintiff and the proposed Class members, Plaintiff and the proposed Class members would not have been injured.

131. The injury and harm suffered by Plaintiff and the proposed Class members was the foreseeable result of Hibbett's breach of its duties. Hibbett knew, or in the exercise of reasonable care should have known that they failed to meet their duties, and that Hibbett's Breach would cause Plaintiff and the proposed Class members to experience the foreseeable harms associated with the exposure of their PII.

132. Directly and foreseeably because of Hibbett's negligent conduct, Plaintiff and the proposed Class members have sustained injury and may recover compensatory, consequential, and nominal damages in an amount to be proven at trial.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

133. Plaintiff and the proposed Class re-allege and incorporate by reference herein, all of the allegations in the paragraphs 1-92.

134. Plaintiff and the proposed Class members conferred a monetary benefit to Hibbett in the form of the provision of their PII and Hibbett would be unable to engage in their regular course of business without that PII.

135. The Complaint alleges that Hibbett received the benefit of Plaintiff's and proposed Class members' PII, in part, for a promise to protect Plaintiff's and proposed Class members' data, but Hibbett saved money by using less costly and less effective security controls, including not encrypting Plaintiff's and proposed Class members' Social Security numbers and other sensitive data while storing it in an system reachable through the Internet or telecommunication and not purging such information from an system reachable through the Internet or telecommunication absent a reasonable need to maintain it there.

136. Hibbett knew that Plaintiff and the proposed Class members conferred a monetary benefit to Hibbett and they accepted and retained that benefit. Hibbett profited from this monetary benefit, as the transmission of PII to Hibbett from Plaintiff and the proposed Class members is an integral part of Hibbett's business.

Without collecting and maintaining Plaintiff's and proposed Class members' PII, Hibbett would be unable to perform their services.

137. Plaintiff alleges that Defendant was supposed to use some of the monetary benefits provided to them by Mr. Putnam and the proposed Class members to secure the PII belonging to Plaintiff and the proposed Class members by paying for costs of adequate data management and security.

138. Hibbett should not be permitted to retain any monetary benefit belonging to Mr. Putnam and the proposed Class members because Hibbett did not put in place necessary security controls to protect Plaintiff's PII and the PII belonging to proposed Class members.

139. Hibbett gained access to Plaintiff's and proposed Class members' PII through inequitable means because Hibbett failed to disclose that they used deficient security controls.

140. Plaintiff and the proposed Class members were unaware of the deficient security controls and would not have entrusted their PII to Hibbett had they known of the deficient security controls.

141. To the extent that this cause of action is pleaded in the alternative to the others, Plaintiff and the proposed Class members have no adequate remedy at law.

142. Directly and foreseeably because of Hibbett's acts and omissions, Plaintiff and the proposed Class members have sustained and are likely to sustain

injury, including without limitation: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity-related fraud risk; (c) the loss of benefit of the bargain (price premium damages); (d) diminution of value of their PII;(e) becoming targets for phishing and ransomware attacks; and (f) the continuing risk to their PII, which remains in the possession of Hibbett, and which is subject to further breaches, so long as Hibbett fail to undertake appropriate and adequate measures to protect Mr. Putnam's and proposed Class members' PII.

143. Directly and foreseeably because of Hibbett's acts and omissions, Plaintiff and the proposed Class members have sustained and are likely to continue sustaining other forms of injury and/or harm, including without limitation, anxiety, emotional distress, loss of privacy, and other economic and noneconomic losses.

144. Hibbett should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and the proposed Class members, proceeds from the monetary benefit that they unjustly received from them.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, requests judgment against Defendant and that the Court grant the following:

A. For an Order certifying the Nationwide Class and appointing Plaintiff and his Counsel to represent such Classes;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii. requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii. requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

v. prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

vi. requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii. requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix. requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to

other portions of Defendant's systems;

x. requiring Defendant to conduct regular database scanning and securing checks;

xi. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the Classes, and to report any deficiencies with compliance of the Court's final judgment;

D. For an award of damages, including actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E. For an award of attorneys' fees, costs, and litigation expenses, as

allowed by law;

F. For prejudgment interest on all amounts awarded; and

G. Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

Date: August 26, 2026

Respectfully Submitted,

*/s/ James M. Terrell*

James M. Terrell
ASB No. 0887-L73J
jterrell@mtattorneys.com
**METHVIN, TERRELL, YANCEY, STEPHENS & MILLER, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 939-0199
Facsimile: (205) 939-0399

*Attorney for Plaintiff and the Proposed Class*